SPRING 2019 TIMELINE   4.9 - 16.5

### *Spring 2019 –*

- *Prior to campus visit, I inquired about completing a sport-focused rotation (email). My request was denied by email and later a phone conversation. My request involved completing a clinical rotation with a sports team as student and/ or as an employee of the team. During the phone conversation, I was informed of the SJC PTA program policy that requires one in-patient rotation and two out-patient rotations. Dr. Mills also mentioned that the SJC PTA program policy prohibits students from performing rotations with a previous or a current employer.*



8/20/2020                                    Mail - Kenneth A. Pitts - Outlook

**Dr. Therese Millis (2019SP Clinical Kinesiology (PTAP-125-601)) just sent you a message in Canvas.**

Dr. Therese Millis <notifications@instructure.com>
Tue 2/5/2019 1:06 PM
To: Kenneth A. Pitts <kapitts94@my.sanjuancollege.edu>

**Clinical Rotations**

Kenneth, I will be out of town through Monday. Is it something that can wait until next week? Do you want me to try and phone this week? Just give me an idea. Tx! Dr. T

From: Kenneth Pitts <notifications@instructure.com>
Sent: Tuesday, February 5, 2019 10:35 AM
To: Therese Millis, Dr. <MillisT@sanjuancollege.edu>
Subject: Kenneth Pitts (2019SP Clinical Kinesiology (PTAP-125-601)) just sent you a message in Canvas.

1



- *During our first visit to the SJC campus, two students (William Heath and Tyler Almieda) shared that they were employed by the same company and would perform "all of their rotations with their employer, at different locations", which were only out-patient sites. I assumed that the SJC PTA program policy had changed since my previous request and phone conversation with Dr. Millis and decided to make another request to do the very same thing that Heath and Almieda were being permitted to do.*

- *I informed Dr. Millis that I had worked as PT Technician in the past. I continued, asking specifically to "go back to work for this employer and perform my rotations at different locations within the company?" I also shared with Dr. Millis a great job opportunity that had become available to me, and presented possible scenarios that might permit me to complete my rotations while not violating the SJC PTA Program policy.*
- *Dr. Millis denied my request stating that the SJC PTA program policy prohibits students from completing rotations with a previous or current employer, even if it is at different locations within the company. She continued informing me that the policy is in place to protect the student from being treated like a PT Tech or Aide during the rotation. She finished saying if the student has worked or is working for the employer as an Aide or Tech, the employer is likely to continue to use the student in that same manner rather than making a student learning experience.*
- *It is also important to mention that Dr. Millis addressed the entire class during this first visit to campus regarding clinical rotations and the SJC PTA Program clinical site selection process. Dr. Millis addressed many things, but stressed that it is against the SJC PTA Program policy to perform rotations with a previous or current employer in any fashion, and that everyone must complete at least one of the three rotations in an in-patient setting.*



3



- *It is important to note that these policies were in place while the two students were already scheduled to perform their rotations with their employer, and at all out-patient sites. Dr. Millis was breaking the program rules for others while enforcing them with me.*

*May 8, 2019 –*

*I sent an email to Lisa Easley in the SJC PTA program to request that ATI Physical Therapy be added to my clinical site list (email). Lisa directed me to email Dr. Millis with my request. Lisa stated that Dr. Millis would add ATI PT and contact ATI to begin setting up the rotation process.*

*I spoke with Dr. Millis days after sending the email to discuss further the addition of ATI Physical Therapy.  I explained to Dr. Millis what I had to Lisa through email.  I explained that ATI has many locations in the Boston area and asked if I could possibly complete multiple out-patient rotation within the company if the set up was successful.*

*Dr. Millis asked if I had worked for or was currently working for ATI and reminded me of the SJC PTA program policy.  She explained yet again that a student cannot perform a rotation with a previous or current employer even at various sites or locations within the company.*

4

*A rotation contract with ATI Physical Therapy was never sought by Therese Millis. An attempt was made after her departure from the San Juan College PTA Program on June 30, 2020.*



## Summer 2019 –

- *While on campus in June and during my mid-term lab practical, the instructor Kristina Lacey showed a lack of integrity and professionalism. The class had been informed prior to the mid-term practical that PNF (Proprioceptive Neuromuscular Facilitation) movements would not be tested, and that we should not use our time studying this information at this time.*
- *During my mid-term lab practical with Kristina Lacey, she asked me to demonstrate PNF movements. I was confused, as the class had been that it would not be covered during this practical. After a moment, Kristina said "I know I said PNF would not be covered, but I want you to show me anyway." When I continued to hesitate, she forcefully requested it again saying "show me."*
- *During the post practical briefing, Kristina immediately stated that I was over on time. After I responded, she went on to say "oh, that's right, you were over because I tested you on PNF and I wasn't supposed to." I agreed. She then said that I "better study PNF more closely or I'll be in trouble the next time." In closing, Kristina said "oh, you passed by the way" and I left the storage room.*
- *This caused a serious lack of trust for Kristina Lacey and the San Juan College PTA Program. At this point, I had encountered a breach in one of my exams, discrimination and inequality when I requested that which was being offered to other students and now testing over materials that had been previously ruled out.*

### Fall 2019 -

In the airport in Durango, CO. on November 1, 2019 while standing in line with the William Heath and Tyler Almieda who had shared previously that they would complete all of their rotations with their employer. In conversation, they both stated once again stated that they were scheduled to complete their rotations as such. They shared that they had "nothing to worry about", as they would be with their employer at different sites within the company, and all out-patient.

During this November campus visit, the class was to meet individually with Dr. Millis to discuss and be updated on clinical rotations. During my discussion with Dr. Millis, I suggested performing rotations at different sites within one of the companies I had selected and had been approved by the site. Dr. Millis responded by asking if I had previously worked for or was currently working for this particular clinic. She asked specifically, "did you work with or for" the individual who would be my CI? Dr. Millis then began stating again that doing so would be in violation of the SJC PTA Program policy and that she would make no exceptions for me. Dr. Millis finished saying that she had repeatedly told me this, and that I "would not receive special treatment in her program." In the end, Dr. Millis said she would have to look into this site and the CI further, and sent the CI another email message.

### February 28, 2020 –

On this date I had a conversation with Kristina Lacey concerning a missed assignment.  I explained to Kristina that I had decided to complete an assignment that was also due on the same date that I would acquire points for. When asked why I did not have enough time for both assignments, I told Kristin that I was working long hours and also interviewing for more gainful employment. I shared with Kristin that the job opportunities were great, but because of the SJC PTA Program policy, I could not perform a rotation with the employer.

Kristina responded suggesting that I "drop out of the program." Her response was a bit upsetting as I was well aware of the two students who were being permitted to perform rotations with their current employer. I would imagine that Kristina was well aware of that also.

Why should I "drop out" to acquire gainful employment while other students are being permitted to perform rotations with their employer?

### April 23, 2020 –

A Zoom meeting was held by Dr. Millis to inform the class that our first rotation had been cancelled. During the meeting Dr. Millis spoke on the changes made by CAPTE due to the Covid-19 pandemic. Dr. Millis addressed many topics, but never did she mention the changes that she would later make on June 9, 2020, which permitted all students to complete rotations with a previous or current employer at different sites. Please request Dr. Millis give you access to this Zoom meeting for confirmation of her claim to have made the policy change announcement during this meeting, which she did not.





*(Please contact by phone regarding: students being permitted to perform rotations with employer, Zoom meeting announcement for policy change, etc)*

*Cindy Shannon:  916-521-4793*

*Christie Starke: 505-991-1949*

8

### *June 3, 2020 –*

*I spoke with Dr. Millis to request a "hands-on" experience rather than virtual lab by way of having a local PT or PTA to complete skills check, etc in clinic. I was told that my only other option would be face to face on campus in August if I chose not to participate in the PTAP 210 virtual lab. Dr. Millis advised me to think on it and contact her with an answer prior to contacting Kristina Lacey.  Dr. Millis also continued to mention the requirement for an in-patient rotation.*

### *June 9, 2020 –*

*I spoke with multiple people at San Juan College on June 9, 2020 regarding my complaint. The Dean of Health Sciences was one of these people. Later that day, Dean Paxson sent an email "alerting" Dr. Millis and Kristina Lacey of my complaint filing earlier that day.*







**June 9, 2020 continued –**

*Shortly after being alerted to my complaint, Dr. Millis sent an email on June 9, 2020 addressing changes in the SJC PTA Program policies. Dr. Millis was now saying that she would allow students to perform rotations with a previous or current employer at different sites. Her email message matched what I had reported as discrimination in my complaint. Please request Dr. Millis give CAPTE access to this Zoom meeting for verification of her claim to have announced the clinical rotation policy change she claims to have on April 23, 2020, in which she did not.*



8/20/2020 — Mail - Kenneth A. Pitts - Outlook

**Therese Millis (2020SP Principles of Rehabilitation (PTAP-210-101W)) just sent you a message in Canvas.**

Therese Millis <notifications@instructure.com>
Tue 6/9/2020 8:16 PM
To: Kenneth A. Pitts <kapitts94@my.sanjuancollege.edu>

**externships**

Hello to all!

I hope you are well and staying safe in this time. I just wanted to reach out to you and catch you up on some of the challenges facing the program in regards to site placement.

In the current wake of COVID 19 and the uncertainty of placement with firm commitments from sites. I have relaxed some of the program rules regarding placement. The current rule indicates that you cannot work at a site you are currently working at or a site you previously worked at in the past 2 years. I am now open to placement at sites you may have worked at or are currently working at and that was briefly conveyed in the Zoom I held with you April 23rd. I also indicated in the Zoom that the rotations will be reduced from a total of 18 weeks to 11 weeks. I have already spoken with a couple of you who have reached out to me and am trying to accomodate requests as they come in,

---

placement at sites you may have worked at or are currently working at and that was briefly conveyed in the Zoom I held with you April 23rd. I also indicated in the Zoom that the rotations will be reduced from a total of 18 weeks to 11 weeks. I have already spoken with a couple of you who have reached out to me and am trying to accomodate requests as they come in,

I just wanted you to know in the wake of COVID 19 my goal is that you graduate on time in December 2020 and that you gain beneficial "hands on" experience as a PTA student in externships before graduation. I would want your site to ensure us that they would train you as a PTA student with "hand's on" work and not use you as a PTA tech. I hope that helps some of you with placement. I am currently reaching out to sites that previously confirmed before COVID 19 to see if they are still considering student placement and if it is a firm or tentative placement. If you have questions please let me know by phone or email. Please stay safe and be patient with the process. I know you all talk to each other but if you have questions you know you can always reach out to me for clarification, concerns or questions

Kind Regards

Therese

**Therese Millis**

You can reply to this message in Canvas by replying directly to this email. If you need to include an attachment, please log in to Canvas and reply through the Inbox

---

12





*(Please contact by phone regarding: students being permitted to perform rotations with employer, Zoom meeting announcement for policy change, etc)*

*Cindy Shannon:  916-521-4793*

*Christie Starke: 505-991-1949*

**Post Complaint (June 9, 2020 to Present) –**

*In a conversation with the Dr. Adrienne Forgette, VP for Learning at San Juan College, I was told that the two students (William (PJ) Heath / Tyler Almieda) I had indicated as being permitted to complete rotations with their employer "were permitted to so do so because they work for a Physical Therapy clinic." When I was told this, I informed Dr. Forgette that there was then another violation of the PTA Program policy in that the employer of PJ and Tyler had no in-patient sites, and everyone is required to complete at least one in-patient rotation. Dr. Forgette responding saying "they work for a Physical Therapy company, so they can do that."*

*As well, Dr. Forgette indicated that she, Dean Paxson, Dr. Therese Millis, and Dr. Amy Cooper, the current interim Program Director, were in agreement that nothing had been found to substantiate my claim. The conclusion these four came to makes no sense, as Dr. Forgette had stated that Dr. Mills had only provided answers such as "I will not confirm, nor will I deny . . ." While Kristina Lacey answered with "I*

14

*don't remember" when questioned. So why then would you now expect me to trust Dr. Amy Cooper if she is a part of all of this?*

*Since then, Dr. Amy Cooper has delayed and provided misleading information about CAPTE restrictions that being placed on the SJC PTA Program and their ability to fulfill my requests to complete the didactic portion of the program by way of "neutral eyes" that I may avoid any further retaliation.*

*Also, after making it very clear that I no longer felt comfortable being graded by the PTA Program staff while Dr. Millis and Kristina Lacey were still involved with the PTA Program, Dr. Forgette falsely stated that "Dr. Millis is no longer employed by the college." Dr. Forgette shared this information because of my fear of retaliation and my repeated requests for her to view the Zoom meeting for verification that Dr. Millis had not announced the same changes on June 9, 2020.*

*In an email sent by Dr. Forgette on June 26, 2020, she stated that "Dr. Millis has left the college", and because of this, she would not be able to view the Zoom meeting. The information provided by Dr. Forgette had been taken as truth until Dr. Millis sent an email message to the entire class on June 28, 2020 announcing her very sudden retirement and rotation updates. The email message Dr. Millis sent on June 9, 2020 made no mention of retiring at the end of the month, and actually stated that her "goal is to graduate you on time in December 2020 . . ."*



15



8/20/2020

Mail - Kenneth A. Pitts - Outlook

**Therese Millis (2020SP Principles of Rehabilitation (PTAP-210-101W)) just sent you a message in Canvas.**

Therese Millis <notifications@instructure.com>
Sun 6/28/2020 1:50 PM
To: Kenneth A. Pitts <kapitts94@my.sanjuancollege.edu>

rotations and such

Hello everyone!

I hope you all are happy and healthy. I just wanted to let you all know that I will be retiring on June 30th. This will be my 15th year with San Juan College and I have really appreciated (most of all) working with and teaching students. I have really enjoyed getting to know you all and I have to admit you all have been great to work with. I will be working on rotations up through June 30th and after the 30th please contact Lisa Easley at easleyli@sanjuancollege.edu or Amy Cooper at coopera@sanjuancollege.edu

We are currently reaching out to the rotations who have not directly corresponded with us for Fall 2020. Some rotations have cancelled for the year while others are starting to slowly take students back. Some sites have never cancelled, however, we are

---

We are currently reaching out to the rotations who have not directly corresponded with us for Fall 2020. Some rotations have cancelled for the year while others are starting to slowly take students back. Some sites have never cancelled, however, we are reaching out to double check their previous commitment in taking you.

As I understand it, some sites have already reached out to you and indicated a cancellation or a commitment. Please let Lisa or Amy know if you have heard from them as sometimes they may communicate with you but not the school.

The Externship classes have been changed as follows
PTAP 230 has been condensed down to 1 week from the previous required 4 weeks (original May-June rotation)
PTAP 270 has been condensed down to 5 weeks from the previous required 7 weeks
PTAP 290 has been condensed down to 5 weeks from the previous required 7 weeks

The dates have changed for Fall to
August 24 – October 2 -This first Fall rotation will be for a combined total of 6 weeks with PTAP 230 blended into the PTAP 270- 5-week rotation (6 weeks total)
October 5 – November 6 (5 weeks total)

(CAPTE indicated earlier in Spring that PTA programs can reduce externships to a maximum total of 11 weeks which is the number of weeks indicated above )

The above dates may vary depending on the sites availability and your final rotation may be flexed into the first week of December if needed. Understand, there is some flex time for both rotations if a clinic has different dates for availability.

16





# Non-Discrimination Policy

Download San Juan College Policy on Non-Discrimination and Sexual Harassment

San Juan College does not discriminate on the basis of a person's race, color, religion, sex, sexual orientation, gender identity, national origin, disability, age, genetic, veteran's status, or on the basis of any other category protected under federal, state and local laws, in regard to admissions, employment, programs and activities. The following person has been designated to handle inquiries regarding the non-discrimination policy of San Juan College.

Stacey Allen
Assistant Director of Human Resources and Title IX Coordinator
Education Services Center, Second Floor, Room 4236
San Juan College
4601 College Boulevard
Farmington, New Mexico 87402
Office (505) 566-3515
Fax (505) 566-3521
Email allens@sanjuancollege.edu

1. San Juan College is in agreement with and dedicated to providing a place of work and learning that is free from discrimination and harassment on the basis of a person's race, color, religion, sex, sexual orientation, gender identity, national origin, disability, age, genetic, veteran's status, or on the basis of any other category protected under federal, state and local laws. Where a violation of policy is found to have occurred, San Juan College will act to stop the conduct, to prevent its recurrence, to remedy its effects, and to discipline those responsible in accordance with the *San Juan College Employee Handbook* and/or *San Juan College Student Code of Conduct.*

17



2   No employee or student at San Juan College, either in the workplace or in the academic setting, should be subjected to discrimination which include inappropriate conduct. Even one incident may constitute a violation of policy and can be the basis for asserting a complaint. It is expected that students, faculty and staff will treat one another and campus visitors with respect.

3.   It is against San Juan College policy to discriminate in any aspect of employment or education, which includes, but is not limited to the following:

1. Recruitment for employment at San Juan College;
2. Employment and accommodation in the workplace;
3. Compensation;
4. Benefits and retirement benefits;
5. Transfers;
6. Layoffs and returns to work;
7. Institutionally sponsored education and training;
8. Tuition assistance;
9. Social and recreational programs;
10. Staff development and career advancement;
11. Admission and class registration;
12. Testing;
13. Grading;
14. Facility and equipment use;
15. Housing;
16. Academic accommodations;
17. Financial aid/scholarships;
18. Any other terms and conditions of employment;
19. Any other academic programs, terms and conditions.

4.   The determination of what constitutes discrimination under this policy will be done on a case-by-case basis and depending upon the specific facts and the context in which the conduct occurs. Some conduct may be offensive, inappropriate, unprofessional, and/or subject to disciplinary action, but would not constitute discrimination under the law. The specific action taken, if any, relating to a particular instance depends on the nature and the seriousness of the conduct that is reported.

**5. Discriminatory practices include, but are not limited to:**

1. Discrimination or harassment on the basis of a person's race, color, religion, sex, sexual orientation, gender identity, national origin, disability, age, genetic, veteran's status or on the basis of any other category protected under federal, state or local laws.
2. Retaliation against an individual for engaging in a protected activity such as filing a charge of discrimination, participating in an investigation, or opposing discriminatory practices;
3. Use of electronic mail or computer dissemination of offensive material relating to protected categories;
4. Denying or interfering with an employee's or student's authorized reasonable accommodation based on disability or religion;
5. Employment or education decisions based on stereotypes or assumptions about the abilities, traits or performance of individuals based on a person's race, color, religion, sex, sexual orientation, gender identity, national origin, disability, age, genetic, veteran's status or on the basis of any other category protected under federal, state or local laws; and
6. Conduct that has the purpose or effect of substantially interfering with an individual's academic or work performance, or of creating an intimidating, hostile or offensive environment in which to work or learn.

**Appeal Process for Students:**

1 Any party who is dissatisfied with the determination has the right to file an appeal within fifteen (15) working days of notification of the decision. A written notice of Policy on Discrimination, Harassment and Sexual Misconduct on Campus Page 17 of 30 appeal must be filed by the aggrieved party with the Office of the Vice President of Student Services

2 The Vice President of Student Services has ten (10) working days from receipt of the signed notice of appeal to schedule in a timely manner an appeals

18



2. The Vice President of Student Services has ten (10) working days from receipt of the signed notice of appeal to schedule in a timely manner an appeals panel to hear the matter. The appeal will be considered do novo by the appeal panel, which shall not be bound by the determination made by the EEO/Title IX Coordinator.

3. Upon receipt of the written notice of appeal, the Vice President for Student Services for his/her designee will appoint an appeal panel composed of six (6) persons and a chairperson. The membership of the Committee will include a. Two (2) faculty members (outside the department of the alleged discrimination occurrence), b. Two (2) professional staff members (outside the department of the alleged discrimination occurrence), c. Two (2) students, and d. Representative staff member from Human Resource Office other than the EEO/Title IX Coordinator of their designee

4. The Vice President will mail a notification of the formal appeal hearing to all individuals involved within ten (10) working days after the receipt of the written notice of appeal

5. The appeal panel will provide all involved individuals an opportunity to present relevant evidence and witnesses and present arguments and the hearing will comply with due process requirements. Cross examination of the complainant or responding party will be done by written questions submitted to the Vice President for Student Services after a short break in the hearing to minimize the potential for a hostile environment. The appellant at the appeal hearing may have an advisor to consult and support them. Advisors may not speak at the hearing, may not address the panel, or question witnesses. Advisors who are disruptive or fail to follow these rules will be removed. Specific guidelines for the appeal hearing are located in the Student Handbook.

6. The appeal panel will determine the outcome of the appeal based on all information presented at the appeal hearing and will use the preponderance of evidence standard. The outcome of the appeal will be determined by majority vote of the participating appeal panel participants. Policy on Discrimination Harassment and Sexual Misconduct on Campus Page 18 of 30

7. The written decision of the appeal panel will be given to the individuals involved, the Title IX Coordinator, the Vice President for Student Services, and the five (5) working days following the completion of the appeal hearing. The complainant will only be notified of any sanctions imposed on the respondent if the sanction directly relates to the complaining student.

8. Any decision of the appeal panel may be appealed to the President within ten (10) working days following the hearing by delivering a written notice of



8. Any decision of the appeal panel may be appealed to the President within ten (10) working days following the hearing by delivering a written notice of appeal to the Office of the President. Upon receipt of the written notice for appeal, the President will review the decision based on the record presented within thirty (30) working days. There will be no appearance or oral argument presented to the President. The decision of the President is final and non-appealable

9. Records of the appeal panel decision will be kept in the Office of the Vice President for Student Services and the EEO/Title IX Coordinator

10. All students are notified that they also have a right to file complaints with the appropriate state, federal, regional or national agency, if they choose, including filing complaint with local law enforcement for sexual violence complaints

11. Penalties Cases for students who are found to have violated the San Juan College Student Code of Conduct will be referred to the Vice President of Student Services. Sanctions for students may include any of the actions listed in Section I above

